**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| THOMAS B. FLETCHER, ET AL. | CIVIL ACTION NO. 18-1153 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JULIAN WHITTINGTON, ET AL. | JUDGE KAYLA MCCLUSKY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 108) filed by Defendant, the Bossier Parish Police Jury ("the BPPJ"). The BPPJ seeks summary judgment as to all claims made against it by Plaintiffs Thomas B. Fletcher and Gail A. Osborne-Fletcher ("Plaintiffs"). Plaintiffs opposed the motion. See Record Document 112. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

This is a federal civil rights action (and state law survival action and wrongful death action) brought by Plaintiffs, who are the parents of the deceased, Collin James Fletcher ("Fletcher"). See Record Document 217 (Second Amended Complaint). Fletcher was arrested by the Bossier City Police Department on September 3, 2017. He was thereafter transported to the Bossier Maximum Security Facility, where he remained until he was found dead in his cell during the early morning hours of September 8, 2017. The BPPJ contends the autopsy of Fletcher indicated that his death was caused by a brain bleed which resulted from a fracture of his skull near the base of the back of the head. See

---

[1] Much of the factual background has been drawn from the BPPJ's Statement of Uncontested Material Facts (Record Document 108-2) and Plaintiffs' Response (Record Document 112-1). Many of the facts relating to the instant motion are undisputed. The Court will note the disputed facts and, where a dispute exists, provide specific cites to the summary judgment record.

Record Document 108-2 at ¶ 3.  Plaintiffs allege the Autopsy Report provided that the cause of death was "head and Neck Injuries" and a contributing factor was "Mixed Drug Interaction."  Record Document 112-1, citing Exhibit 46 (Autopsy Report).

Plaintiffs contend Fletcher fractured his skull during one of his numerous falls while he was in custody at the Bossier Maximum Security Facility.  See id. at 112-1 at ¶ 4.  The BPPJ contends the fracture of Fletcher's skull occurred when he fell backwards into the wall.  See Record Document 108-2 at ¶ 4.  It is alleged that Fletcher experienced one or more seizures while housed at Bossier Maximum Security Facility.  According to Plaintiffs, Fletcher's alleged seizures and physical injuries, including his death, were secondary to benzodiazepine withdrawal syndrome. It is alleged that Fletcher did not receive proper treatment – i.e., Defendants were deliberately indifferent – for benzodiazepine withdrawal syndrome while he was housed at the Bossier Maximum Security Facility.  See Record Documents 108-1 at ¶ 4 and 112-1 at ¶4.

Plaintiffs have named fourteen defendants, many of whom are Bossier Sheriff's Office employees.  Plaintiffs assert numerous claims against the BPPJ, including Count IV (Fourteenth Amendment-Monell); Count VII (Vicarious Liability); Count VIII (Indemnification); Count IX (Survival Action); and Count X (Wrongful Death).  See Record Document 217.

**LAW AND ANALYSIS**

**I.     Summary Judgment Standard**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Quality Infusion Care, Inc. v. Health Care Serv.

Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**II.    Indemnification**

In Count VIII of the Second Amended Complaint, Plaintiffs allege that "Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities." Record Document 217 at 32. The BPPJ moved for summary judgment on Plaintiffs' indemnification claim on multiple grounds, mainly that they had no standing or right of action to bring such a claim. See Record Document 108-1 at 16. More specifically, the BPPJ argued "such a claim for indemnity, even if one exists, would be an action personal to the named individual defendant." Id.

3

Plaintiffs only cursorily addressed indemnification in their opposition.  See Record Document 112 at 17.  Plaintiffs contend that because the BPPJ did not cite any authority in support of its argument the Court should not decide the issue.  See id.

Here, there is no dispute that Plaintiffs bear the burden of proof on all of their claims.  Thus, at the summary judgment stage, the BPPJ "may merely point to an absence of evidence, thus shifting to [Plaintiffs] the burden of demonstrating by competent summary judgment proof that the is an issue of material fact warranting trial."  Lindsey v. Sears Roebuck & Co., 16 F.3d 616, 618 (5th Cir. 1994).  Thus, summary judgment in favor of the BPPJ is **GRANTED** as to any claim for indemnification made by Plaintiffs against BPPJ.

### III. Vicarious Liability

Under Louisiana law, employers are vicariously liable for the torts of their employees under Louisiana Civil Code Art. 2320, which provides, in part:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> In the above cases, responsibility only attaches, when the masters or employers . . . might have prevented the act which caused the damage, and have not done it.

La. C.C. Art. 2320.  Although Article 2320 provides that employers are only liable when they might have prevented the act which caused the damage, the courts of this state have consistently held that employers are vicariously liable for any torts occasioned by their employees.  See Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990).  This judicial interpretation of Article 2320 has been codified at La. R.S. 9:3921, which provides, in part:

"every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed."

In its summary judgment motion, the BPPJ maintains that none of the named individual defendants are its employees such that vicarious liability would attach. Plaintiffs do not dispute this argument as to any of the Bossier Sheriff Defendants. See Record Document 112. Conversely, as to Dr. Russell W. Roberts ("Dr. Roberts"), a named defendant, Plaintiffs alleged in the Second Amended Complaint that he was "employed by the Louisiana Department of Public Safety & Corrections, Bossier Parish Police Jury, Bossier Sheriff's Office, and/or Bossier Parish, as a physician." Record Document 217 at 4. In their opposition to the BPPJ's summary judgment motion, Plaintiffs argue that "it is undisputed that the Police Jury negotiated a contract with LSU to borrow LSU's employee to provide at least some of the medical services that the Police Jury had a duty to provide." Record Document 112 at 16. They contend that LSU was Dr. Roberts' general employer, but the BPPJ was his "special employer." Plaintiffs cite to Blair v. Tynes, 621 So. 2d 591, 599 (La.), on reh'g, 625 So. 2d 1346 (La. 1993) and Morgan v. ABC Manufacturer, 97-0956 (La. 5/1/98), 710 So. 2d 1077, and submit that the BPPJ can be held vicariously liable for Dr. Roberts' conduct, which allegedly caused Fletcher's death. See id. at 16.

Plaintiffs rely on two facts to support their position that the BPPJ was Dr. Roberts' "special employer": (1) the existence of a Contract for Professional Services ("the Contract") between LSU, the BPPJ, and the Bossier Parish Sheriff (Record Document 112-2); and (2) the Contract's termination provision (Record Document 112-2 at 4). There is no dispute that Dr. Roberts was employed by LSU, the physician service provider under

5

the Contract. The critical issue is whether Dr. Roberts became a "borrowed employee" of the BPPJ such that the BPPJ can be held vicariously liable for Dr. Roberts' conduct.

"There is a presumption that the general employer retains control of his employee, and the party who alleges that an employee has become a borrowed servant bears the burden of proving by a preponderance of the evidence on that issue." Brumbaugh v. Marathon Oil Co., 507 So. 2d 872, 876 (La. Ct. App.), *writ denied*, 508 So. 2d 824 (La. 1987). The determination of borrowed employee status involves factual inquiries, including: "(1) who has the right of control over the employee; (2) who selected the employee; (3) who pays the employee's wages; (4) who has the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) the length of employment; (7) which employer's work was being performed at the relevant time; (8) whether there was an agreement, either implicit or explicit, between the lending and borrowing employers; and (9) whether the employee acquiesced in the new work situation." Vosburg v. City of New Roads, 2019-1292 (La. App. 1 Cir. 5/11/20), *writ denied*, 2020-00695 (La. 9/29/20), 301 So. 3d 1193. As a whole, the application of these factors do not objectively support a finding that Dr. Roberts was the BPPJ's borrowed employee. There is no evidence that he ever took orders from or came into contact with anyone associated with the BPPJ. There is no evidence that Dr. Roberts was performing the work of the BPPJ, which – as noted *infra* – was to fund healthcare of inmates at the Bossier Maximum Security Facility. The Contract made no reference to "borrowed" employees. There is no evidence that Dr. Roberts ever considered himself to be an employee of the BPPJ. Again, as noted *infra*, the Bossier Parish Sheriff and not the BPPJ operated the Bossier Maximum Security Facility. The BPPJ did not have the right to

discharge or terminate Dr. Roberts and, finally, the BPPJ paid LSU, not Dr. Roberts, under the Contract. Thus, summary judgment in favor of the BPPJ is **GRANTED** as to any vicarious liability claim because Dr. Roberts was not a BPPJ employee such that the BPPJ could be held vicariously liable for the conduct that allegedly caused Fletcher's death.[2]

### III. Survival Action and Wrongful Death

Louisiana Civil Code Articles 2315.1 and 2315.2 provide a cause of action under Louisiana law for survival action and wrongful death, respectively. Yet, there is no independent negligence claim under these articles. Rather, the elements of negligence will constitute the "offense" that Plaintiffs must prove to establish their survival action and wrongful death action. Here, Plaintiffs have conceded as much, stating in their opposition they did not assert an independent negligence claim against the BPPJ. See Record Document 112 at 16.[3] Thus, summary judgment in favor of the BPPJ is **GRANTED** as to any independent negligence claim against the BPPJ by Plaintiffs.

### IV. Section 1983 Fourteenth Amendment/Monell Claim

In Count IV of the Second Amended Complaint, Plaintiffs allege a Fourteenth Amendment – Monell liability claim pursuant to Section 1983 against the BPPJ and other

---

[2] The Contract further provided:

> With respect to all matters pertaining to this contract, it is hereby understood and specially agreed that the Physician Service Provider shall be deemed an independent contractor and shall in no event be considered an employee, servant, agent, partner or joint venturer with or of the Parish.

Record Document 112-2 at 5.

[3] In the Second Amended Complaint, there is no direct negligence claim asserted against the BPPJ. See Record Document 217 at 29.

7

defendants.  See Record Document 217 at ¶¶ 221-226.  Plaintiffs contend that the failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.  See id. at ¶ 223.  Further, they submit that a policymaker's failure to staff a jail with persons who had the authority to transfer a detainee to the hospital and/or monitor the serious health needs of the detainee could support an inference that unconstitutional policies were the moving force behind the carelessness that led to the detainee's death.  See id. at ¶ 224.[4]  More specifically, as to the BPPJ, Plaintiffs allege that Bossier Max was underfunded and unable to provide necessary and proper medical care to inmates.  See id. at ¶ 177(a).  They contend that as a result of this underfunding, necessary and appropriate medical care was not provided to inmates.  See id. at ¶ 177(c).

Fletcher was a pretrial detainee.  Thus, the claim under Section 1983 for deliberate indifference to Fletcher's safety and serious medical needs is analyzed under the Fourteenth Amendment.  Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir. 1996). He is pursuing a conditions of confinement claim against the BPPJ.  See Record Document 112 at 13.  "To establish municipal liability on a conditions of confinement claim, a pretrial detainee must show: (1) a condition of confinement; (2) not reasonably related to a legitimate governmental objective;[5] (3) which caused a violation of the detainee's constitutional rights."  Hawkins v. Montague Cnty., Texas, No. 7:10-CV-19-O,

---

[4] These Fourteenth Amendment – Monell Liability claims pursuant to Section 1983 were asserted against the BPPJ and the Bossier Sheriff's Office.  See Record Document 217 at ¶¶ 221-226.

[5] The Fifth Circuit has recognized that "the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases." Duvall v. Dallas Cnty., Tex., 631 F.3d 203, 207 (5th Cir. 2011).

8

2012 WL 13019680, at *1–2 (N.D. Tex. Aug. 1, 2012), *citing* Duvall v. Dallas Cnty., Tex., 631 F.3d 203, 207 (5th Cir. 2011). "A condition of confinement may be shown through an intentionally adopted official policy or an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." Hawkins, 2012 WL 13019680, *1, citing Shepherd v. Dall. Cnty., 591 F.3d 445, 452 (5th Cir. 2009). It is a heavy burden to prove a pattern amounting to an intended condition or practice and the Fifth Circuit has rarely found such burden satisfied. See Shepherd, 591 F.3d at 452; Hawkins, 2012 WL 13019680, *1. A condition of confinement must also be more than a *de minimis* violation to be actionable. See Duvall, 631 F.3d at 208. In Shepherd, the Fifth Circuit explained:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks. Allegations of insufficient funding are similarly unavailing. Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due process rights.

Shepherd, 591 F.3d at 454.

The BPPJ has now moved for summary judgment as to Plaintiffs' Fourteenth Amendment Monell claim. La. R.S. 33:4715 provides that "the police jury of each parish shall provide . . . a good and sufficient jail." Likewise, the police jury, as the governing authority, "shall be responsible for the physical maintenance of all parish jails and prisons." La. R.S. 15:702. However, La. R.S. 15:704 provides that "[e]ach sheriff shall

9

be the keeper of the public jail of his parish."  The Fifth Circuit has recognized this distinction:

> Under Louisiana law, the Police Jury had no responsibility over the daily operation of the Jail. However, state law does require the Police Jury to "provide ... a good and sufficient jail," La.Rev.Stat.Ann. § 33:4715 (West 1966), to be "responsible for the physical maintenance of all parish jails and prisons," id. § 15:702 (West 1981), and to pay all expenses incurred in "the arrest, confinement, maintenance and prosecution of persons accused or convicted of crimes," id. § 15:304. . . . Clearly the Police Jury had a duty to fund and maintain the Jail.

O'Quinn v. Manuel, 773 F.2d 605, 609 (5th Cir. 1985).

In the instant matter, the BPPJ has presented competent summary judgment evidence as to funding and the operation of the Bossier Maximum Security Facility. William Altimus ("Altimus"), the Parish Administrator, testified during his deposition:

> In 2017, the Bossier Parish Police Jury had no operational duties and responsibilities related to the care, custody, and control of inmates incarcerated at the Bossier Max, other than to provide the jail facility, and to provide for the physical maintenance of the jail.

Record Document 108-4 (Altimus Deposition) at 7.  He further explained that the BPPJ would "fund the request from the Sheriff's Office to provide that service.  We were just – built the facility, and maintain the facility."  Id. at 9.  The BPPJ's role, according to Altimus, was funding, more specifically funding the Sheriff's request to provide medical care.  See id. at 10, 14.  Altimus testified that in September of 2017, the BPPJ did not have a duty to provide medical care to the inmates.  See id. at 17.  There is also competent summary judgment evidence that the BPPJ funded whatever request it received from the Sheriff's Department.  See id. at 20.  In his affidavit, Altimus stated:

> For the fiscal years 2013, 2014, 2015, 2016 & 2017, the Bossier Parish Police Jury fully funded all amounts requested by the Bossier Sheriff's Office for medical care and treatment for inmates at the Bossier Maximum Security Facility.

10

Record Document 108-3 (Altimus Affidavit) at 8. Altimus further states that he was "unaware of funding ever being an obstacle to providing medical care to inmates at the Bossier Maximum Security Facility as required by law." Id. at ¶ 9.

The BPPJ was also not involved in creating the medical policies in effect at the Bossier Maximum Facility. See Record Document 108-5 (Bossier Sheriff's Office Video Deposition) at 91-92. Instead, those policies were created/implemented by the Bossier Parish Sheriff's Office. See id. Further, it was not the policy of Bossier Parish Sheriff's Office to inform the BPPJ about the medical conditions of inmates, including Fletcher. See id. at 92.

Here, there is no summary judgment evidence of a pervasive pattern of serious deficiencies in providing for the basic human needs of detainees at the Bossier Maximum Security Facility. All funding requests were fulfilled and the BPPJ was not involved in day-to-day medical care or the creation of medical policies. Moreover, there is no summary judgment evidence that any "condition of confinement" was the result of inadequate funding by the BPPJ. Finally, there is simply no showing of deliberate indifference, that is, no BPPJ official had subjective knowledge of the risk of harm to Fletcher and subjective intent to cause harm to Fletcher.

In opposing the BPPJ motion, Plaintiffs point to La. R.S. 15:703 and argue the BPPJ failed to provide the minimum requisite healthcare to detainees. La. R.S. 15:703 provides:

> A. The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick. His salary shall be fixed by the governing authority. Any physician so appointed shall be licensed as provided in R.S. 37:1271

> and shall be a qualified health care provider in accordance with R.S. 40:1231.2.
>
> B.      In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section. The term "health care provider" as used in this Subsection means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or regulated by the laws of this state to provide health care services or professional services as a physician and qualified as such in accordance with R.S. 40:1231.2.

La. Stat. Ann. § 15:703.  This a new theory/claim raised for the first time in response to BPPJ's Motion for Summary Judgment.  Plaintiffs never alleged in their complaints that the BPPJ breached a duty to contract for at the "requisite" medical services pursuant to Section 703(B).  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutrera v. Bd. of Sup'rs of Louisiana State Univ., 429 F.3d 108, 113 (5th Cir. 2005), *citing* Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir.1990).  This claim may be dismissed on this basis alone.

Additionally, Section 703 does not reference "minimum requisite healthcare." Instead, such phrase can be found in Louisiana Administrative Code Title 22 § III-2909, which is a list reasonable guidelines for use by persons responsible for the planning, administration and construction of parish jails in Louisiana.  See Record Documents 113-1 and 113-2.  Such guidelines cannot be grafted into the requirements of Section 703(B). Likewise, the alleged failure to follow such guidelines cannot necessarily equate to a constitutionally inadequate medical system.  Plaintiffs' argument based on the Louisiana Administrative Code Title 22 § III-2909 is misplaced and unconvincing.  Accordingly,

summary judgment in favor of the BPPJ is **GRANTED** as to Plaintiffs' Section 1983 Fourteenth Amendment/<u>Monell</u> Claim.

## CONCLUSION

For the reasons set forth above, the BPPJ's Motion for Summary Judgment (Record Document 108) is **GRANTED** and all of Plaintiffs' claims against the BPPJ are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 17th day of August, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT