UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| THOMAS B. FLETCHER, ET AL. | CIVIL ACTION NO. 18-1153 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JULIAN WHITTINGTON, ET AL. | JUDGE KAYLA MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 139) filed by Defendant, Dr. Russell Roberts ("Dr. Roberts"). Dr. Roberts seeks summary judgment as to all claims made against him by Plaintiffs Thomas B. Fletcher and Gail A. Osborne-Fletcher ("Plaintiffs"). Defendant the Bossier Parish Police Jury ("the BPPJ"), the Bossier Sheriff's Office Defendants ("the BSO Defendants"), and Plaintiffs opposed the motion. See Record Documents 191, 193, 198, & 201. Dr. Roberts replied to all opposition briefs. See Record Documents 205-207. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a federal civil rights action (and state law survival action and wrongful death action) brought by Plaintiffs, who are the parents of the deceased, Collin James Fletcher ("Fletcher"). See Record Document 217 (Second Amended Complaint). Fletcher was arrested by the Bossier City Police Department on September 3, 2017. At the time of his arrest, he was found to be in possession of approximately 202 Xanax bars. See id. at ¶ 23. Fletcher was thereafter transported to the Bossier Maximum Security Facility, where he remained until he was found dead in his cell during the early morning hours of September 8, 2017. See id. at ¶¶ 165-172.

On September 3, 2017, Fletcher completed an initial Corrections Division Medical Screening form and stated that he took 100 mg of Zoloft daily and Xanax nightly.  See Record Document 146-14 at 1.  He answered in the affirmative that he currently used benzodiazepines and that he had recently been under a doctor's care for "psychiatric anxiety."  Id. at 1-2.  On September 4, 2017, Fletcher completed an Intake Medical Screening Questionnaire with Nurse Katrina Chandler, RN ("Chandler").[1]  See Record Document 146-5.  The questionnaire listed Fletcher's current medications as Zoloft and Xanax; noted he had a seizure disorder one year ago; and listed depression and anxiety as his current mental health complaints/symptoms.  See id.  Chandler testified in her deposition that during the intake screening, Fletcher told her he took "a lot" of Xanax and that his past seizure was "probably" related to withdrawal.  Record Document 146-18 (Chandler Deposition) at 25-26.  Chandler put Fletcher on the mental health list to be seen by psychologist, Dr. Anita Flye ("Dr. Flye").  See id. at 40-41.

In September 2017, a "Contract for Professional Services" between the BPPJ, the BSO, and Louisiana State University Health Science Center ("LSUHSC-S") was in place. See Record Document 112-2 (Contract).  Under the Contract, LSUHSC-S agreed to, among other things, provide outpatient medical care at the Bossier Correctional Facilities; provide clinical services at the Bossier Correctional Facilities; evaluate and treat inmates for medical problems during clinic hours; provide medical services during clinic hours; and assist in the review and update of policies and procedures for the Health Services Staff. See Record Document 112-2 at 1-2. Pursuant to the Contract, Dr. Roberts – an employee of LSUHSC-S – was providing on-site clinic service at the Bossier Maximum Security

---

[1] Chandler is a BSO Defendant.

2

Facility, two days per week, half a day each day. See id.; Record Document 139-4 (Dr. Roberts' Affidavit).

There is a factual dispute as to whether Fletcher was Dr. Roberts' patient. During Fletcher's incarceration, Dr. Roberts was on site for clinic services on the mornings of September 5, 2017 and September 7, 2017. See Record Document 139-20. Dr. Roberts contends that on September 5, 2017, he did not evaluate Fletcher and was not made aware of his presence at the facility. See Record Document 139-4.

During the morning of September 5, 2017, Fletcher suffered an apparent seizure. See Record Document 217 at ¶¶ 56-72. The Clinic Notes reflect the seizure, that Fletcher was transferred to medical for observation for two hours, started on benzodiazepine withdrawal protocol (hydroxyzine), and then released on 30 minute medical watch. See Record Document 146-6 (Clinic Notes) at 1. Chandler and Nurse Katie Rachal[2] both stated in their depositions that Fletcher hit his head during the seizure. See Record Document 146-18 (Chandler Deposition) at 48-49; Record Document 146-21 (Rachal Deposition) at 30-35. Fletcher's erratic behavior continued on September 5, 2017. See Record Document 217 at ¶¶ 92-110.

On September 7, Chandler, Rachal, and Dr. Flye returned to Fletcher's cell so Dr. Flye could meet with him. See Record Document 146-18 at 92-93. Dr. Flye met with Fletcher and requested the M.D. consider stat dose of Haloperidol (Haldol) and Benzotropine and also consider starting Sertraline, the generic form of Zoloft. See Record Document 146-28 (Flye Deposition) at 39. It appears that at least the Haloperidol and Benzotropine were administered. See Record Document 146-18 at 92-93. Fletcher's

---

[2] Rachal is a BSO Defendant.

erratic behavior continued on September 7, 2017. Dr. Flye recalled "withdrawal symptoms i.e. psychosis" hearing things, seeing things 'paranoia' he was very skittish about people being around him and why they were there." Record Document 146-28 at 38. She further noted confusion and depression. See id. at 39.

There are many factual disputes and discrepancies surrounding Dr. Roberts' treatment of Fletcher, his knowledge of Fletcher's medical history, and his knowledge of Fletcher's current medical condition on September 7, 2017. Dr. Roberts contends that he was not made aware that Fletcher was an inmate until September 7, 2017, when Chandler asked him to go see an inmate that had been placed on medical watch; had undergone evaluation; was under the care of the mental health department. See Record Document 139-4. On that same day, Dr. Roberts attempted to evaluate Fletcher, but claims he was unable to do so. See id. Fletcher was never brought to clinic, but Dr. Roberts attempted to go see Fletcher to do an evaluation. See id. Dr. Roberts claims this was not achieved. See id. Dr. Roberts further contends that he did not authorize or sign the hydroxyzine or haloperidol orders for Fletcher. See id.

Dr. Roberts submits that when he left Bossier Maximum Security Facility on September 7, 2017, he was not under any belief or assumption that Fletcher was in a life-threatening condition. See Record Document 139-4. Dr. Roberts stated in his affidavit that when he left the facility on September 7, 2017, and until Fletcher's death, he never received any calls from Bossier Maximum Security Facility about Fletcher. See id. Dr. Roberts stated that he found out about Fletcher's death when he returned to the facility for his next clinic the following week. See id.

Plaintiffs assert claims of constitutional violations against Dr. Roberts for deliberate indifference pertaining to inadequate medical care of Fletcher, supervisory liability, duty to intervene, and state law negligence claims. See Record Document 217. In June 2019, this Court dismissed without prejudice Plaintiffs' state law negligence claim against Dr. Roberts, leaving only the constitutional claims. See Record Document 49. Dr. Roberts now files the instant Motion for Summary Judgment and asserts he is entitled to dismissal of the remaining Section 1983 claims as a matter of law. See Record Document 139.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it

could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

## II. Section 1983 Fourteenth Amendment Inadequate Medical Care Claim

In Count I of the Second Amended Complaint, Plaintiffs allege a Fourteenth Amendment Due Process claim against Dr. Roberts. See Record Document 217 at 21-25. More specifically, they allege Dr. Roberts provided inadequate medical care and was deliberately indifferent to the serious medical needs of Fletcher. See id.

Fletcher was a pretrial detainee. Thus, the claim under Section 1983 for deliberate indifference to Fletcher's safety and serious medical needs is analyzed under the Fourteenth Amendment. See Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir. 1996). "The episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." Id. at 647–48. "Inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's serious medical needs, constituting the unnecessary and wanton infliction of pain." Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999) (internal quotations and citations omitted). Under the deliberate indifference standard, a prison official is not liable unless he knows of and disregards an excessive risk to inmate health or safety. See id. at 534. Malpractice or negligent care does not rise to the level of deliberate indifference. See id. "Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." Id.

6

Dr. Roberts moves for summary judgment on the inadequate medical care claim on two grounds: (1) Fletcher was never his patient; thus, no patient-physician relationship was established and there can be no claim against Dr. Roberts for inadequate medical care; and (2) Dr. Roberts was not deliberately indifferent to the medical care of Fletcher. As to the existence of a physician-patient relationship, the Court finds genuine disputes of material fact that prevent resolution of the issue.[3] At the outset, the Court notes that a physician-patient relationship is not a necessary element to a federal constitutional claim for deliberate indifference. See Rogers v. Hierholzer, No. SA-16-CV-01171-FB, 2018 WL 6933282, at *3 (W.D. Tex. Dec. 28, 2018) ("As this case involves an alleged violation of Rogers's Eight Amendment right to adequate medical care, rather than medical negligence on the part of Dr. Smith, it is unclear to the undersigned why at trial Dr. Mathis's opinion with respect to the existence of a physician-patient relationship would be relevant or assist the trier of fact."). However, evidence regarding the creation/existence of a physician-patient relationship is relevant to the highly disputed factual underpinnings

---

[3] Dr. Roberts contends there was no physician-patient relationship because there was no physical examination and no consensual transaction because Fletcher refused to see Dr. Roberts. Dr. Roberts also contends he did not prescribe medication to Fletcher. Conversely, the BPPJ notes that Dr. Roberts previously invoked the protections of the Louisiana Medical Malpractice for State Services Act in this case, which requires a physician-patient relationship. See Record Documents 29, 36, & 41. Moreover, Dr. Roberts was the only doctor who saw patients at Bossier Maximum Security Facility's medical clinic. The BPPJ points to Dr. Roberts' deposition testimony that he reviewed Fletcher's chart. See Record Document 132-3, Exhibit 68 at 3. Dr. Roberts admitted in his deposition that Dr. Anita Flye could not prescribe medications and he "would have to be the one to issue that." Id. at 93. Here, there is no dispute that Fletcher was given prescription medications, namely hydroxyzine, and haloperidol. Plaintiffs also point to Fletcher's signature on the Screening Form in which he authorized "the responsible corrections physician (or his designee) to administer such medical examination or treatment as necessary while I am incarcerated in this facility." See Record Document 146-14 (Corrections Division Medical Screening).

of this case regarding medical treatment, including Dr. Roberts' subjective knowledge and intent, and is also necessary to determine if indemnification is proper under the "Contract for Professional Services."

The Court likewise finds summary judgment is inappropriate on the issue of deliberate indifference. There are genuine disputes of material fact regarding Dr. Roberts' knowledge of Fletcher's serious medical needs, namely if Dr. Roberts knew of and disregarded an excessive risk to Fletcher's health. While not an exclusive list, there is conflicting summary judgment evidence on the following issues:

- Did Rachel call Dr. Roberts to discuss her conversation with Fletcher's father and Fletcher's apparent addiction to Xanax, such that Dr. Roberts knew he had a patient who might be experiencing Xanax withdrawal;[4]

- Did Dr. Roberts review Fletcher's medical chart;

- Did Dr. Roberts know that Fletcher had been taking Xanax and Zoloft and had a history of psychiatric problems, anxiety, and depression;

- Did Dr. Roberts have knowledge of or believe that Fletcher had a seizure on the morning of September 5, 2017;

- Did Dr. Roberts know that Fletcher was on a withdrawal protocol;

- Did Dr. Roberts authorize or sign off on prescription medications, such as hydroxyzine, sertraline, and haloperidol, to be administered to Fletcher;

- Did Dr. Roberts conduct a neurological examination by speaking to Fletcher for a minute or two while Fletcher was in a holding cell;

- Did Dr. Roberts observe erratic behavior or a medical emergency when he saw Fletcher in the holding cell; and

- What did Dr. Roberts believe Fletcher's medical condition to be when he left Bossier Maximum Security Facility on September 7, 2017.

---

[4] Rachal recalls that sometime after Fletcher's reported seizure on September 5, 2017 and Dr. Flye's evaluation on September 7, 2017, she received a call from Fletcher's father. See Record Document 146-21 at 80. The father informed Rachal that Fletcher had issues with Xanax previously and had suffered from depression. See id. at 80-81.

8

All of these factual disputes go to whether Dr. Roberts gained actual knowledge of the substantial medical risk of harm to Fletcher and disregarded that risk, that is, responded with deliberate indifference. The credibility of Dr. Roberts is also at issue. Thus, summary judgment is **DENIED** as to the Fourteenth Amendment inadequate medical care claim.[5]

### III.   Section 1983 Fourteenth Amendment Supervisory Liability Claim

In Count II of the Second Amended Complaint, Plaintiffs assert a Fourteenth Amendment supervisory liability claim against Dr. Roberts. See Record Document 217 at 25-26. Dr. Roberts has moved for summary judgment on such claim. Under Section 1983, an official cannot be held vicariously liable for the conduct of those under his supervision. See Alderson v. Concordia Par. Corr. Facility, 848 F.3d 415, 420. A supervisory official is only accountable for his own acts of deliberate indifference and for implementing unconstitutional policies that causally result in the alleged injury to the plaintiff. See id. A supervisor's deliberate indifference generally requires a plaintiff to allege at least a pattern of similar violations. See Rios v. City of Del Rio Texas, 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

Here, Plaintiffs have offered no summary judgment evidence of a pattern of similar violations. Moreover, "in order to establish supervisor liability for constitutional violations committed by *subordinate employees*, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." Pena v. City of Rio Grande City, 879 F.3d 613, 620

---

[5] In his motion, Dr. Roberts raises qualified immunity once: "prison officials are protected by qualified immunity for medical treatment decisions, unless . . . ." Record Document 139-2 at 13. Without more, this Court will not address the applicability and/or availability of the qualified immunity defense.

9

(5th Cir. 2018) (emphasis added), *citing* Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted, alterations and emphasis in original). As argued by Dr. Roberts in his motion, he was not the employer of any of the staff at the Bossier Maximum Security Facility. See Record Document 139-2 at 18. All of the correctional officers and nurses involved in the events surrounding Fletcher's death were employed by the Bossier Parish Sheriff's Office. See id. Plaintiffs have simply failed to offer any competent summary judgment evidence to establish a supervisory claim against Dr. Roberts. Therefore, summary judgment in favor of Dr. Roberts is **GRANTED** as to the Fourteenth Amendment supervisory liability claim.

### IV.      Section 1983 Fourteenth Amendment Duty to Intervene Claim

In Count III of the Second Amended Complaint, Plaintiffs allege a Fourteenth Amendment duty to intervene claim against Dr. Roberts. See Record Document 217 at 26. Dr. Roberts has moved for summary judgment on such claim. First, the Court notes that Plaintiffs did not present argument or evidence on the failure to intervene claim in their opposition to Dr. Roberts' motion. Their failure to raise an argument in opposition to summary judgment on this claim equates to waiver. See Indep. Coca–Cola Employees' Union of Lake Charles, No. 1060 v. Coca–Cola Bottling Co. United, Inc., 114 F. App'x 137, 143-44 (5th Cir. 2004) (unpublished) (holding that party's failure to raise an argument in opposition to summary judgment waived the argument). Moreover, the failure to intervene claim against Dr. Roberts fails as a matter of law. In a prison setting, the duty to intervene encompasses a prison guard or correctional official's duty to intervene and attempt to end an assault on an inmate. See Coleman v. LeBlanc, No. CV 19-395-JWD-SDJ, 2020 WL 4679545, at *5 (M.D. La. July 28, 2020), report and recommendation

adopted, No. CV 19-395-JWD-SDJ, 2020 WL 4680145 (M.D. La. Aug. 12, 2020). Such a duty does not extend to medical officials in the prison setting. See Smith v. Donate, No. 4:10-CV-2133, 2012 WL 1899323, at *6 (M.D. Pa. Apr. 5, 2012), report and recommendation adopted, No. CIV. 4:10-2133, 2012 WL 1899318 (M.D. Pa. May 24, 2012).[6] Summary judgment in favor of Dr. Roberts is **GRANTED** as to the Fourteenth Amendment duty to intervene claim.

## V.    State Law Negligence Claim

Dr. Roberts did not address state law negligence in his Motion for Summary Judgment. However, the Court notes that in Count VI of the Second Amended Complaint, Plaintiffs purport to assert a Louisiana state law negligence claim against Dr. Roberts. See Record Document 217 at 29-31. However, as stated by Dr. Roberts in his motion, Plaintiffs' state law negligence claim against Dr. Roberts was dismissed without prejudice on June 17, 2019, leaving only the constitutional claims. See Record Document 139-2 at 7; see also Record Document 49.[7] Thus, to the extent necessary, the Court reiterates its

---

[6] In Smith, the court held:

> Here, it is undisputed that Dr. Zaloga is not an employee or correctional official at this county prison. Rather, he simply is an independent private contractor who provides medical services to inmates. As a private contractor, Dr. Zaloga has no law enforcement or corrections standing, status, responsibilities, duties, or training, and Dr. Zaloga is not authorized by the warden to intervene in correctional matters such as cell extractions. Given these undisputed facts, Smith's failure to intervene claim against Dr. Zaloga cannot prevail because the first essential element of that claim, a legal duty to intervene, is simply absent. Therefore, this claim should be dismissed with respect to Dr. Zaloga.

Smith, 2012 WL 1899323, at *6.
[7] The Court noted "the parties do not dispute that Fletcher's state law negligence claim against Roberts is covered by the LMMA [Louisiana Medical Malpractice Act]." Record Document 41 at 4. Thus, finding that the Fletchers had failed to exhaust the procedural

11

prior ruling dismissing without prejudice Plaintiffs' state law negligence claim against Dr. Roberts.

## CONCLUSION

For the reasons set forth above, Dr. Roberts' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the Fourteenth Amendment supervisory liability claim and the Fourteenth Amendment duty to intervene claim. The motion is **DENIED** as to the Fourteenth Amendment inadequate medical care claim. Plaintiffs' state law negligence claim against Dr. Roberts was previously dismissed without prejudice.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 19th day of August, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

requirements of the LMMA before filing suit, the Court held that the state law negligence claim against Dr. Roberts was premature and dismissed such claim without prejudice. See id.